## *In re* CITY NATIONAL BANK OF FORT WORTH, Petitioner.

ORIGINAL.

No number. Submitted April 9, 1894. — Decided April 30, 1894.

*Mandamus* is the proper remedy when a mandate of this court has been disregarded.

In this case the court cannot hold that its mandate was disregarded by the decree rendered under it by the Circuit Court.

THE court stated the case as follows :

This is an application for leave to file a petition for mandamus directing the Circuit Court of the United States for the Northern District of Texas to vacate or modify a decree heretofore entered by that court in a certain cause therein pending, wherein Hunter and others were complainants and the City National Bank of Fort Worth, Texas, was defendant, on the ground that in rendering such decree the Circuit Court departed from the mandate of this court sent down on the disposition of an appeal from a former decree in the cause as reported in *City National Bank* v. *Hunter*, 129 U. S. 557.

We do not feel required to restate the case as set forth at length when it was then before us. Briefly, on May 20, 1880, one O'Neal was indebted to Hunter, Evans & Co., and also to the City National Bank, each of whom claimed to hold a lien, to secure the indebtedness, on certain cattle owned by O'Neal. One Dawson was desirous of purchasing the cattle, and the result was that the parties in interest entered into three written agreements, under which the cattle were sold and delivered to Dawson, he executing a note for the purchase price, payable to the order of Hunter & Co. and the bank, to be paid and the proceeds distributed according to certain terms and stipulations agreed on. The note was delivered upon its execution to Henry E. McCulloch, who was selected by Hunter & Co. and the bank, as their joint agent, to accom-

pany the cattle and receive and distribute the proceeds as sales were made by Dawson. Certain amounts were received and distributed accordingly. Shortly after, and on May 31, Hunter & Co. filed a petition in Montague County, Texas, against O'Neal and Dawson, to foreclose a mortgage given by O'Neal to them, on the cattle then in possession of the latter, and sequestrated the cattle. Thereupon Dawson replevied the cattle, and gave a bill of sale of them to the bank, which furnished the security upon the replevin bond and agreed to hold the parties harmless from any liability thereon. The bank notified McCulloch that his agency had ceased, and took possession of the herd through its agent, one Ellis, who had a power of attorney from the bank to make title to the cattle as sold off by Dawson and receive the proceeds. The suit of Hunter & Co. in Montague County was removed to the Circuit Court, and they there filed an amended bill, September 30, 1881, to which they made the bank a party defendant, and prayed in the alternative that, if they were mistaken in seeking a foreclosure, a decree be rendered against Dawson and the bank for the amount of money coming to them from the proceeds of the cattle. The cause was heard in the Circuit Court and a decree rendered, which, upon appeal to this court by the bank, was reversed and the cause remanded, with a direction to enter a decree in conformity with the opinion. The opinion found the amount due from O'Neal to Hunter & Co., February 20, 1880, to which certain interest was to be added as pointed out, down to the date at which Dawson paid the balance due on his note into the bank, a matter not made clear on that record, and also directed the amount of the bank's debt to be ascertained by adding certain interest to O'Neal's note held by it down to the same date. From these two indebtednesses the *pro rata* to which complainants and the bank were entitled out of the fund to be distributed was to be computed, and from the amount to come to complainants according to this computation certain deductions were directed to be made, and the balance to be paid out of the money deposited by Dawson, as of the date of such deposit, the bank retaining the remainder. After the

cause was remanded the parties entered into the following stipulation:

"It is agreed between Hunter, Evans & Co., on the one part, and the City National Bank of Fort Worth, Texas, on the other part, that the proceeds of the cattle in controversy in this case were paid over to James F. Ellis, one of the securities on the replevin bond, who, for himself and as agent for the other securities on said bond, accompanied said cattle to the Indian Territory and collected the balance due on the note from Dawson to Hunter, Evans & Co. and said City National Bank, and that said Ellis, on behalf of himself and said other securities on said bond, deposited said amount collected by him in said City National Bank as a general deposit, with the understanding that said money should remain on deposit in said bank to abide the determination of this suit for the purpose of indemnifying them, said securities, against any loss by reason of their signing said bond.

" Said deposit was made in the name of the ' Dawson bond account,' and the amount has remained and still remains on general deposit as aforesaid in said bank.

" It is further agreed that said deposit was made at the following dates and in the following amounts respectively:

" 1. June 26th, 1880, three thousand one hundred and twenty-eight dollars.

" 2. August 3rd, 1880, five thousand dollars.

" 3. August 6th, 1880, five thousand six hundred and forty-four dollars.

" Total amount deposited, thirteen thousand seven hundred and seventy-two dollars, which, as other general deposits, has been used by the bank as other of its funds.

" It is further agreed that this agreement shall stand in lieu of answer to plaintiff's bill of discovery, and answer to same is hereby waived."

The Circuit Court thereupon rendered a decree, providing, among other things, that Hunter & Co. recover of the bank the sum of $12,084.85, together with interest thereon from date of decree at the rate of eight per cent per annum, and the costs after September 30, 1881, the date of the filing of

complainants' amended bill, all prior costs being adjudged against Hunter & Co. The bank then prosecuted an appeal to this court, assigning as error that the Circuit Court included, in the recovery against the bank, interest on complainants' portion of the money, and awarded costs. The contention was that the allowance of the interest was inconsistent with the mandate of this court, and the amount thus questioned was "nearly or quite $4000." When the appeal came to be considered we found ourselves compelled to dismiss it, because the sum in dispute was not sufficient to give us jurisdiction, and no appeal lies from a mere decree for costs. *City Bank* v. *Hunter*, 152 U. S. 512.

*Mr. A. H. Garland* for the petitioner.

That this remedy is the one and only one the petitioner has, it seems, is beyond question. *In re Washington & Georgetown Railroad*, 140 U. S. 91; *Gaines* v. *Rugg*, 148 U. S. 228; *City Bank* v. *Hunter*, 152 U. S. 512.

Then, is the bank chargeable with interest on the amount of the decree?

This court, when it passed on the case before, (129 U. S. 557,) had the whole matter before it, and disposed of it fully, as far as could then be done, and it was silent as to any interest of this sort, while Rule 23 of this court stood before it, as a permanent and exacting reminder for justice, by way of compensation for all improper delays and withholdings in payment of money. And this rule, differing then in number, in connection with the statute allowing interest, etc., was happily commented on by Mr. Justice Story in *Boyce* v. *Grundy*, 9 Pet. 275. This case denied the allowance of interest by the court below, after the mandate which gives not interest goes down. The argument might stop here.

But is the bank thus liable on general principles of law?

The agreement of the parties in this case shows the character of this deposit as it was found by this court, 129 U. S. 564, 565, "on the Dawson bond account" to remain as a general deposit "to await the result of this suit."

The general law, regardless of the peculiarity of this deposit, would forbid any demand for interest on this more general deposit. *Haswell* v. *Farmers' and Mechanics' Bank*, 26 Vermont, 100; *Duncan* v. *Magette*, 25 Texas, 245.

And this court, in passing upon the question of liability of banks for interest on deposits, rests it on grounds completely negativing the idea of interest in cases like this — a general deposit — the bank being a mere stakeholder or depositary at most. *National Bank* v. *Graham*, 100 U. S. 699; *Commonwealth Bank* v. *Mechanics' Bank*, 94 U. S. 437. And this is in harmony with the general principle of law as to deposits where the depositary is a mere stakeholder, and he is not found to be in default.

But again, section 4507, Tit. 90, Rev. Stat. Texas, (Sayles,) provides, in short, that if the defendant replevy the property he should not be liable for the rents, hire, or revenue thereof; this is applicable here, for the reason that the money is simply the proceeds of the cattle, and if the cattle had been returned in kind there would have been nothing to pay, and certainly it was optional whether the cattle should be returned in kind or the value of the cattle accounted for. This local law of Texas must, in the nature of things, have conclusive weight in this proceeding, as it is upon Texas laws alone, in the absence of congressional legislation, the law as to this question is to be determined. *Massachusetts Benefit Ass'n* v. *Miles*, 137 U. S. 689.

Again, the opinion of this court (129 U. S., *supra*) plainly indicated that the plaintiffs were at fault in suing out a writ of sequestration, in that they had no title or right to the property in question; that the writ of sequestration was wrongfully obtained, and that they were not entitled to interest upon the value of the cattle. And while upon this subject the attention of the court to the strong and emphatic language of the opinion in this line is most earnestly asked. p. 571, et seq. That can leave no doubt at all of the correctness of our view of this transaction. But if the court should hold that interest is recoverable, then it is certain that the opinion should be taken as holding, in effect, that interest was recov-

erable against Dawson, and that it was not intended that the bank should pay this interest, the bank being, as before said, simply a stakeholder, or, at most, a depositary.

As for the judgment against the bank for costs, we think that is palpably erroneous, for the court indicates throughout that plaintiffs below were in default. Indeed, the court in such opinion intimated most clearly that were it not for the fact that the money was shown to be on hand that it would order plaintiff's bill to be dismissed. And as costs are in the nature of damages or punishment for default, and we have shown the bank is not in default, the same reasons that relieve it of interest will also relieve it of costs.

It is obvious, then, the lower court did not proceed upon the mandate in this case, in conformity with the opinion of this court, but flew in the face of it in awarding interest and costs, and therefore this court is respectfully asked to direct that decree to be vacated.

MR. CHIEF JUSTICE FULLER, after stating the case as above reported, delivered the opinion of the court.

Application is now made for mandamus, and this is the proper remedy, if the mandate of this court has been disregarded, but if not, the application for leave to file should be denied.

We are of opinion that whether or not the proceeds of the cattle were received and retained by the bank under such circumstances as to render it liable to Hunter & Co. for interest on their *pro rata* share, was a matter which was necessarily so far left at large by our former decree that we cannot hold that the mandate was disregarded by the decree rendered thereunder by the Circuit Court.

The Dawson note was held in trust for Hunter & Co. and the bank, payment to be worked out from the cattle through the agency of McCulloch, and when the bank terminated McCulloch's agency, took possession of the herd, and received the proceeds of the cattle from Ellis, it received the *pro rata* share of Hunter & Co. in trust for them, as the litigation

turned out, and nothing in the directions we gave prevented the Circuit Court from holding the bank to a liability to pay interest thereon if, in its judgment, it was justified in so doing by the facts disclosed on the hearing. Ellis was the agent of the bank and the money was kept and used by the bank, being carried on the books to the credit of the "Dawson bond account," subject to the determination of this suit. The language of the stipulation that the amount collected was deposited by Ellis as a "general deposit," and used "as other general deposits," "as other of its funds," does not change the legal effect of the transaction so far as Hunter & Co. were concerned, who had nothing to do with the agreement of the bank to indemnify Dawson's sureties on the replevin bond. The use of their part of the money under the circumstances may have induced the Circuit Court to arrive at the result complained of. We are not, however, called on to say whether the allowance of the interest was or was not correct, as the only question is whether that court disobeyed the mandate, which we do not think it did.

As to the costs, we are also clear that the action of the Circuit Court was not precluded by the former decision.

Leave to file the petition must, therefore, be

*Denied.*